United States District Court
District of Massachusetts

NATIONAL ASSOCIATION OF )
GOVERNMENT EMPLOYEES, )
     Plaintiff, )
)
     v. ) Civil No.
) 11-11123-NMG
HON. ROBERT MULLIGAN, JOHN )
O'BRIEN, BERNARD DOW, FRANCES )
WALL, RONALD CORBETT, JR., )
WILLIAM BURKE, ELIZABETH TAVARES )
and PATRICIA WALSH, )
     Defendants. )
)

## MEMORANDUM & ORDER

GORTON, J.

This case arises out of charges of public corruption. The Complaint alleges that the Massachusetts Office of the Commissioner of Probation ("Probation Department"), at the insistence of then-Commissioner John O'Brien and with the active assistance of other senior officials, systematically based employment decisions on political affiliation in violation of the First and Fourteenth Amendments to the United States Constitution, administrative regulations and the collective bargaining agreement between the Probation Department and Trial Court employees.

I. **Background**

The Probation Department is the division of the Massachusetts

Trial Court ("Trial Court") responsible for overseeing the supervision of criminal offenders and for serving the information needs of judges and lawyers in state criminal cases. The Office of the Chief Justice of Administration and Management of the Trial Court ("CJAM") manages the Trial Court and has direct supervisory authority over the Probation Department. It is responsible for promulgating hiring standards for the Probation Department and is vested with the power to rescind any appointment not made in conformance with those standards. The Personnel Policies and Procedures Manual issued by CJAM in 2001 ("Personnel Manual") directs that all appointments must be made solely on the basis of merit and must not involve nepotism or other kinds of favoritism.

In May 2010, the Boston Globe published an exposé purporting to uncover corrupt employment practices at the Probation Department ("the Globe Article"). According to the Globe Article, then-Commissioner O'Brien regularly received calls from Massachusetts government officials, including recently-convicted former Speaker of the House Salvatore DiMasi, seeking to secure preferential treatment for Probation Department employment candidates who had paid cash for favorable "recommendations." O'Brien would then instruct officials in the Commissioner's Office responsible for making employment decisions to favor those candidates.

In response to the Globe Article, the Supreme Judicial Court ("SJC") appointed attorney Paul Ware as independent counsel to

investigate the matter. In November 2010, Ware issued a lengthy and comprehensive report ("the Ware Report") substantiating many of the accusations. At the same time, the SJC issued a Statement of the Justices 1) appointing a task force headed by former Attorney General Scott Harshbarger to make recommendations designed to inject transparency and impartiality into the hiring process, 2) directing that the CJAM take "all measures necessary" to comply with those recommendations and 3) referring the Ware Report to the United States Attorney for the District of Massachusetts ("USAO") and the Attorney General for the Commonwealth of Massachusetts ("COMAG") for further investigation and possible prosecution.

The response has been swift. The Harshbarger Task Force has formulated a plan of action and the Legislature has enacted An Act Relative to the Reorganization of the Judicial System of the Commonwealth ("the Reorganization Act"), both of which CJAM is in the process of implementing. The USAO and COMAG have launched parallel federal and state criminal investigations of those who orchestrated and participated in the scheme. Civil litigation has likewise ensued. In December 2010, NAGE filed 11 actions in Massachusetts Superior Court for Suffolk County on behalf of employees whose arbitration decisions, it claims, were tainted by the "Pay for Play" system and should be vacated.

## II. Parties

The National Association of Government Employees ("NAGE") is a national labor organization and the certified exclusive bargaining agent of approximately 2,000 Trial Court employees. In that capacity, it is responsible for enforcing the collective bargaining agreement and filing grievances and lawsuits on behalf of those employees it represents.

John O'Brien was employed as the Commissioner of the Probation Department from 1998 until his resignation in 2010. Elizabeth Tavares, Frances Wall, William Burke and Patricia Walsh worked as deputy commissioners during the relevant period but have since resigned or retired. Together, they will be referred to as the "Probation Department Defendants."

Robert Mulligan ("Chief Mulligan") has served as the Administration and Management Chief Justice since October 1, 2003. Ronald Corbett, Jr. became Acting Commissioner of the Probation Department when O'Brien resigned. He continues to hold that position. Together, they will be referred to as the "Trial Court Defendants."

Bernard Dow was employed as the Assistant Chief Probation Officer for the Worcester District Court until his retirement in 2009.

## III. Procedural History

On September 8, 2011, NAGE filed the Amended Complaint ("the

Complaint") in this Court asserting federal and state-law claims against Chief Mulligan, Corbett, O'Brien, Wall, Burke, Tavares, Walsh and Dow (collectively, "the defendants"). Count I against the Trial Court Defendants in their official capacities and the Probation Department Defendants in their individual capacities recites a cause of action under 42 U.S.C. § 1983 for political-affiliation discrimination in violation of the First and Fourteenth Amendments to the United States Constitution. Count II against the Probation Department Defendants and Dow in their individual capacities recites a claim for intentional interference with contractual relations. Count III against the Probation Department Defendants alleges fraud.

With respect to the Trial Court Defendants, the plaintiff seeks equitable relief in the form of 1) an injunction directing Chief Mulligan to rescind any Probation Department appointment made during the period between 2003 and 2010 for which political affiliation played a substantial or motivating role and 2) a declaration that the NAGE members who were discriminated against suffered a deprivation of their constitutional rights. With respect to the Probation Department Defendants and Dow, the plaintiff seeks nominal, compensatory and punitive damages in addition to the same declaratory relief as requested against the Trial Court Defendants.

Defendants O'Brien and Walsh have moved to stay the

proceedings pending the outcome of grand jury investigations at the state and federal levels. The United States and the Commonwealth of Massachusetts have filed a joint motion to intervene, with the assent of the plaintiff, and likewise seek a stay of this case while they pursue related criminal investigations. The motions to stay and to intervene are unopposed.

Defendants Dow, Burke, O'Brien and Walsh have separately moved to dismiss the Complaint. In accordance with the Court's electronic order entered October 7, 2011, plaintiff's oppositions to those motions to dismiss are due to be filed one week after this Court rules on the pending motions to stay.

Defendants Chief Mulligan and Corbett have asked the Court to dismiss the Complaint or, in the alternative, to abstain from hearing the case altogether. They request that the Court rule on their motion before staying the case if the Court elects to do so. While plaintiff initially requested that the Court delay adjudication of that motion and extend the time period allotted to file its opposition, plaintiff has since filed its opposition to which the Trial Court Defendants have replied.

### IV. Motion to Intervene

The United States and the Commonwealth of Massachusetts jointly move to intervene in this case. The plaintiff assents to the intervention and the defendants are not opposed.

A district court may permit a movant to intervene in a civil

action if that movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Where, as here, federal or state prosecutors anticipate bringing related criminal charges against one or more defendants to a civil action, "it is well established" that such parties may intervene to seek a stay of discovery. SEC v. Downe, No. 92 Civ 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993). Having found that this case and the corresponding criminal investigations share common issues of law and fact, this Court concludes that United States and the Commonwealth of Massachusetts have demonstrated a sufficient interest in the present action to permit intervention.

### V. Motions to Stay

Defendants O'Brien and Walsh and interveners the United States and the Commonwealth of Massachusetts have separately moved to stay this case pending the outcome of state and federal grand jury investigations. Their motions are unopposed.

A district court has the inherent discretionary authority to stay a civil action if the interests of justice so require. Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d 72, 77-78 (1st Cir. 2004). The following seven factors bear upon a court's decision whether to stay a case:

> 1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, 2) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem, 3) the convenience

of both the civil and criminal courts, 4) the interests
of third parties, 5) the public interest, 6) the good
faith of the litigants (or the absence of it) and 7) the
status of the cases.

Id. at 78. While a court is not compelled to stay a civil proceeding during the pendency of a parallel criminal investigation or prosecution, such a scenario has been recognized as one in which a stay may well be appropriate. Id.

This Court is convinced that a stay would promote the interests of justice in this case. Parallel criminal and civil proceedings would present the defendants with a conundrum: invoke their Fifth Amendment rights and risk losing the civil action or answer discovery requests in the civil action and risk criminal prosecution. A stay would avoid that predicament and, conversely, would prevent defendants from exploiting liberal civil discovery rules to obtain evidence to support their criminal defenses. A stay would also conserve judicial resources and narrow the issues to be resolved in the event that criminal convictions are obtained. Under that scenario, defendants would be estopped from re-litigating issues decided against them. Given these several considerations and finding no opposition, this action will be stayed pending the outcome of state and federal grand jury investigations and any prosecutions which may follow.

## VI. Motions to Dismiss and/or Abstain

Defendants have asked the Court to dismiss the Complaint or, in the alternative, to abstain from hearing the case. Plaintiff,

on the other hand, has requested that the Court delay adjudication of those motions until after it has resolved the motions to stay and plaintiff has been given the opportunity to conduct further discovery on the abstention issue. Because the motion to stay will be allowed and further discovery would not alter the Court's decision with respect to the motion to abstain, plaintiff's motion will be denied.

A. **Motion to Abstain**

The Trial Court Defendants contend that the Court should abstain from hearing the case pursuant to the Burford and Younger abstention doctrines. Before delving into the specifics of those doctrines, a general survey of abstention is in order.

Abstention is a prudential mechanism carved out by the federal courts pursuant to which they may decline to exercise jurisdiction in "exceptional circumstances" where denying a federal forum would serve an important countervailing interest, such as "regard for federal-state relations" or "wise judicial administration." Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd., 633 F.3d 20, 30 (1st Cir. 2011). Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them by Congress, "abstention occupies an uneasy position in the jurisprudence of federal court jurisdiction" and should be considered in only a discrete set of situations, each named for the corresponding Supreme Court case giving rise

to that species of the doctrine. Id. at 29-30.

### 1. **Burford abstention**

Under the doctrine of Burford abstention, deriving its title from the eponymous case, Burford v. Sun Oil Co., 319 U.S. 315 (1943), district courts are encouraged to decline federal review when it would interfere with a state's ability to conduct centralized regulatory policymaking. Chico Serv. Station, 633 F.3d at 30. The First Circuit has cautioned against an expansive interpretation of the Burford doctrine, advising district courts to reserve it for

> narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate.

Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993). Some examples may help explain the purpose of Burford abstention and the situations in which it is appropriate.

Burford itself involved a permitting system by which the Texas Railroad Commission was charged with deciding which parties could withdraw what oil from a commonly drilled field. 319 U.S. at 317-24. Dissatisfied with the Commission's administrative rulings, one oil company, invoking diversity jurisdiction, asked a federal court to decide as a matter of state law that it was entitled to a state oil permit entitling it to remove oil from the field. Id. Because the case involved a highly technical

issue of state law which required consistent and centralized decisionmaking, the Supreme Court abstained to avoid needless federal conflict with the state policy. Id. at 333-34.

In New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989), a city council rate-making order was challenged in federal court as inconsistent with a order issued by the Federal Energy Regulatory Commission. In deciding that abstention was inappropriate, the Supreme Court contrasted the situation from that in Burford. First, plaintiff's initial claim was not "entangled in a skein of state law" that needed to be unraveled before the federal case could proceed and thus its adjudication "would not unduly intrude into state governmental process or undermine the State's ability to maintain desired uniformity." Id. at 361. Second, although resolution of plaintiff's subsequent claim required an inquiry into state practices and industry-specific expertise, it did not "demand significant familiarity with" or "disrupt state resolution of" distinctively local policies. Id. at 363-64.

As those cases make clear, the overarching concern of Burford abstention is "to prevent federal courts from bypassing a state administrative scheme," Chico Serv. Station, 633 F.3d at 29, to allow plaintiffs to obtain "individualized review of agency-specific regulatory determinations," Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 525 (1st Cir. 2009).

-11-

Three factors have been identified as relevant to deciding whether Burford abstention is appropriate: 1) the availability of timely and adequate state-court review, 2) the existence of difficult questions of state law which bear upon important questions of public policy and 3) the potential for federal review to interfere with state administrative policymaking. Chico Serv. Station, 633 F.3d at 32. Against that backdrop, the Court considers whether Burford abstention is warranted in this case.

### a. Availability of state-court review

A court weighing Burford abstention must first determine whether "timely and adequate state-court review is available." Id. Here, the Court must decide whether NAGE members have an administrative remedy available to them to contest the adverse (and purportedly corrupt) employment decisions.

As defendants point out, some NAGE members may be able to obtain review in Massachusetts courts because NAGE has initiated grievances to contest the non-promotion of its members and has filed suit in Massachusetts Superior Court seeking to vacate 11 unfavorable arbitration awards on the grounds that they were obtained by fraud. Those suits do not, however, afford NAGE members any opportunity to litigate their constitutional claims because the scope of those actions is limited by statute to the five grounds for vacating arbitration awards. Even if those suits were to provide some remedy, it would be limited to only 11

of the more than 100 members represented by NAGE in this action. Although a state remedy is available here, it is inadequate.

### b. Existence of state-law issues

Even if adequate review were available in state court, this case would be unsuitable for abstention because plaintiff presents a pure federal claim of political-affiliation discrimination which turns on the scope of the First Amendment, the doctrine of qualified immunity and the disputed facts which gave rise to the claim. It does not require the Court to examine state law nor is it essentially a state-law issue "dressed in constitutional clothing." Bath Mem. Hosp. v. Me. Health Care Fin. Comm'n, 853 F.2d 1007, 1014 (1st Cir. 1988).

The Court's conclusion is bolstered by the developing consensus among federal courts that Burford abstention is unwarranted where, as here, plaintiffs bring First Amendment challenges to state laws or actions. See Wilbur v. Harris, 53 F.3d 542, 545 (2d Cir. 1995) (Burford abstention unwarranted in § 1983 action alleging political-affiliation discrimination); Neufeld v. City of Baltimore, 964 F.2d 347, 350-51 (4th Cir. 1992) (Burford abstention unwarranted with respect to First Amendment challenge to zoning ordinance because case involved state-law issues only in a "peripheral" sense); Ripplinger v. Colling, 868 F.2d 1043, 1049 n.5 (9th Cir. 1989) (Burford abstention unwarranted with respect to First Amendment challenge to

obscenity statute because case did not turn on local issues state courts are especially competent to resolve); Felmeister v. Office of Att'y Ethics, 856 F.2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised.").

### c. Interference with state policymaking

In the aftermath of the Ware Report, the executive, legislative and judicial branches of the Massachusetts government have worked diligently to remedy the "Pay for Play" scandal. Efforts have already begun to prosecute those responsible for orchestrating and participating in the scheme and to develop prospective procedures to avoid similar hiring scandals in the future. This Court is confident that those matters will be resolved fairly and expeditiously without the need for federal judicial intervention.

It remains unclear, however, whether retrospective policies and procedures will be adopted to remedy the allegedly corrupt hiring and promoting that is the focus of this case. If so, the government will have plenty of time to take necessary action while this case is stayed. If not, this Court will, as always, be available as a forum in which plaintiffs may seek to vindicate their constitutional rights.

### 2. Younger abstention

Younger abstention, arising out of Younger v. Harris, 401

U.S. 37 (1971), is warranted when the relief requested by the plaintiff in the federal forum would 1) interfere with ongoing state-initiated proceedings which 2) are judicial in nature, 3) implicate an important state interest and 4) provide an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge. Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 518 (1st Cir. 2009). For the doctrine to apply, the federal-court plaintiff must itself be a party to the state-court proceedings. Mass. Delivery Ass'n v. Coakley, No. 11-1441, 2012 WL 170877, at *6 (1st Cir. Jan. 20, 2012). Because NAGE is not a party to the related state proceedings initiated by the SJC or the COMAG, the Court will not abstain on Younger grounds.

B. **Motions to Dismiss**

Defendants seek dismissal of the Complaint on the grounds that 1) it fails to state claims upon which relief can be granted, 2) it was not filed within the statute of limitations period and 3) plaintiff lacks standing to file it.

Because the defendants' motions to dismiss are not fully briefed, the Court will reserve its adjudication of them until the plaintiff is given the opportunity to respond. The Court reminds the plaintiff that its consolidated response is due within one week of the date of this Memorandum and Order, as specified by the Court's electronic order entered October 7, 2011.

To date, this Court has allowed plaintiff six extensions of time to reply to the subject motions to dismiss. It will not allow a seventh.

### ORDER

In accordance with the foregoing,

1) The joint motion to intervene filed by the United States and the Commonwealth of Massachusetts (Docket No. 42) is **ALLOWED**;

2) The joint motions to stay filed by the United States and the Commonwealth of Massachusetts (Docket No. 42-1) and defendants O'Brien and Walsh (Docket No. 29) are temporarily held in abeyance until <u>after</u> the Court rules upon the pending motions to dismiss, after which they will be **ALLOWED** and the case will be stayed pending the outcome of state and federal grand jury investigations and prosecutions;

3) Plaintiff's motion to delay adjudication, for leave to conduct further discovery and for an extension to file an opposition (Docket No. 58) is **DENIED**;

4) The motion to dismiss and/or abstain filed by the Trial Court Defendants (Docket No. 49) is, with respect to the motion to abstain, **DENIED**. The Court reserves judgment on the motion to dismiss pending receipt of the opposition to be filed; and

5) Pursuant to the Court order dated October 7, 2011, plaintiff's oppositions to the motions to dismiss filed by Bernard Dow (Docket No. 25), William Burke (Docket No. 31) and Patricia Walsh and John O'Brien (Docket No. 33) shall be filed on or before the close of business on Wednesday, March 28, 2012.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 21, 2012