United States District Court
District of Massachusetts

```
                                    )
NATIONAL ASSOCIATION OF             )
GOVERNMENT EMPLOYEES,               )
            Plaintiff,              )
                                    )    Civil No.
            v.                      )    11-11123-NMG
                                    )
HON. ROBERT MULLIGAN, JOHN          )
O'BRIEN, BERNARD DOW, FRANCES       )
WALL, RONALD CORBETT, JR.,          )
WILLIAM BURKE, ELIZABETH TAVARES    )
and PATRICIA WALSH,                 )
            Defendants.             )
                                    )
```

### MEMORANDUM & ORDER

GORTON, J.

The Complaint alleges that the Massachusetts Office of the Commissioner of Probation ("Probation Department"), at the insistence of then-Commissioner John O'Brien and with the active assistance of other senior officials, systematically based employment decisions on political affiliation in violation of the First Amendment to the United States Constitution, state administrative regulations and the collective bargaining agreement ("CBA") between the National Association of Government Employees ("NAGE") and the Chief Justice for Administration and Management of the Trial Court of the Commonwealth of Massachusetts, of which the Probation Department is a subdivision.

-1-

The background and procedural history of this case was recounted in a Memorandum and Order issued by this Court on March 21, 2012 ("the M&O"). It will be rehearsed here only to the extent necessary. As previously described, a bevy of motions to dismiss were filed by defendants Dow, Burke, O'Brien, Walsh, Corbett and Chief Mulligan. As grounds, defendants contend that 1) NAGE lacks standing to bring suit on behalf of its members, 2) the Complaint fails to state claims for political-affiliation discrimination and interference with contractual relations and 3) the interference with contractual relations claim is barred by the statute of limitations. In accordance with the Order of this Court, the plaintiff filed its consolidated opposition to the motions to dismiss on March 28, 2012.

Having determined that a motion hearing is warranted in light of the complexity and uncertainty of the issues raised in the motions to dismiss of Burke, O'Brien, Walsh, Corbett and Chief Mulligan, the Court retains those motions under advisement for the time being. Conversely, because the issues presented by defendant Bernard Dow's motion to dismiss do not require further briefing or argument, that motion will be resolved herein.

## I.   Failure to State a Claim

### A.   Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain

-2-

"sufficient factual matter" to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must
accept as true all factual allegations underlying the claim and
draw all reasonable inferences in favor of the non-moving party.
Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir.
2000).  In considering the merits of a motion to dismiss, the
Court may not look beyond the facts alleged in the pleadings,
documents attached as exhibits or incorporated by reference in
the complaint and matters of which judicial notice can be taken.
Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d
204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

     Post-Twombly and Iqbal, ruling on a motion to dismiss
involves two inquiries.  First, the Court must assess whether the
complaint contains sufficient factual allegations to state a
claim for relief and to inform the defendant of the nature of
that claim.  Second, the Court must evaluate whether the claim is
plausible.  Assessing plausibility is a "context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense" to determine whether the well-pled
facts alleged in the complaint are sufficient to "permit the
court to infer more than the mere possibility of misconduct."
Iqbal, 129 S.Ct. at 1950.

## B.   Application

Defendant Bernard Dow, who is alleged to be one of the beneficiaries of the employment scheme and not one of its orchestrators, has moved to dismiss Count II, the sole count against him, on the grounds that it fails to state a claim for interference with contractual relations.

To survive Dow's motion to dismiss, NAGE must state plausible allegations that 1) it had a contract with a third party, 2) Dow knowingly induced the third party to break that contract, 3) Dow's interference, in addition to being intentional, was improper in motive or means and 4) NAGE was harmed by Dow's actions. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) (citing G.S. Enters., Inc. v. Falmouth Marine, Inc., 571 N.E.2d 1363, 1369 (Mass. 1991)).

The CBA, which is attached to the Complaint, contains a provision requiring that the Probation Department "choos[e] employees according to merit and seniority."  By participating in the "Pay for Play" scheme, Dow, among others, purportedly induced officers of the Probation Department to breach that provision by basing hiring decisions on political affiliation and patronage, thereby harming those NAGE members who chose not to participate.

According to Dow, the Complaint fails to state a claim for interference with contractual relations because 1) the CBA was not binding at the time of the alleged breach and 2) NAGE has not

satisfactorily pled the third (impropriety) or fourth (damages) elements of the tort.

The Court will begin by evaluating whether a contract existed and, if so, whether it was enforceable.  Dow asserts, and plaintiff does not dispute, that the CBA which purports to cover the period from July 1, 2004 to June 30, 2007 was signed on November 1, 2006, more than two years into the term. Unsurprisingly, the parties construe this discrepancy differently.  To Dow, it means that no collective bargaining agreement between the parties existed until the date of execution in 2006.  NAGE discounts the lack of formality, explaining that the parties reached an informal bargaining agreement before the term began.  The fact that it was not memorialized or executed until well into the term purportedly is not uncommon in the labor context and does not bear upon its validity.

Massachusetts courts have adopted the majority position that provisions of a collective bargaining agreement need not initially be in writing to be enforceable. Service Employees Intern. Union, Local 509 v. Labor Relations Comm'n, 571 N.E.2d 18 (Mass. 1991); cf. In re Dittmar, 618 F.3d 1199, 1205-06 (10th Cir. 2010) (explaining that "[i]n the labor context, parties frequently reach informal or oral collective bargaining agreements that they later intend to formalize" and such agreements "are enforceable under federal law, even when they are

-5-

not reduced to writing"). The Complaint alleges that the CBA was a binding contract, the existence of which was assumed before it was officially signed, and parties acted in reliance upon its provisions. In so pleading, plaintiff satisfies the minimal burden our notice pleading regime imposes.

The Court turns to the question of whether NAGE met its burden of pleading impropriety. Dow submits that it was not alleged that his conduct constituted "actual malice." While that may be true, Dow superimposes an "actual malice" standard where none exists. To successfully plead that a defendant's interference was "improper in motive or means," a plaintiff need only state that the interference "is wrongful by some measure beyond the fact of interference itself." United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 23 (Mass. 1990). It is beyond peradventure that allegations of secretive participation in a patently unlawful scheme to obtain employment benefits through bribery and patronage satisfies the standard.

The final arrow in Dow's quiver, that NAGE failed to plead damages, is belied by the face of the Complaint and does not warrant further mention.

## II. Statute of Limitations

Dow asserts that Count II should be dismissed on the alternate ground that it is barred by the statute of limitations.

-6-

## A.   Standard

The statute of limitations period for an intentional interference with contractual relations claim is three years from the date the action accrues. M.G.L. ch. 260 § 2A.  Causes of action sounding in tort, such as this one, accrue either when the plaintiff is injured as a result of the defendant's unlawful act, or, if the wrong is "inherently unknowable," when the plaintiff knows or should have known that it has been injured. Pagliuca v. City of Boston, 626 N.E.2d 625, 628 (Mass. App. Ct. 1994).

An exception to the general rule arises when the defendant fraudulently conceals the basis of the claim and, in so doing, prevents the plaintiff from discovering it.  In such cases, the statute of limitations is tolled until a plaintiff's actual discovery of the factual bases underlying its cause of action. See M.G.L. ch. 260 § 12.  The fraudulent concealment statute requires a plaintiff to show that the defendant took an affirmative step to cover up the cause of action. Tagliente v. Himmer, 949 F.2d 1, 6 (1st Cir. 1991) (applying Massachusetts law) ("[M]ere silence is not a fraudulent concealment . . . there must be something in the nature of positive acts with intent to deceive.").

To prevail on a statute of limitations defense at the motion to dismiss stage,

the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other

-7-

allowable sources of information, and (2) suffice to establish the affirmative defense with certitude.

Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008).  If the applicability of the fraudulent concealment or inherently unknowable wrong exceptions turn on disputed issues of fact, those facts "must be resolved by a jury." Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d 1053, 1063 (Mass. 2002).

### B.   Application

Dow asserts that Count II is barred by the statute of limitations because it accrued at the time Dow received the promotion in 2004, seven years before the Complaint was filed, and he took no affirmative actions to conceal its existence.  In response, NAGE characterizes its claim as "inherently unknowable" and reasons, as such, that it accrued upon the publication of the Ware Report in 2010.  Even if its claim were not "inherently unknowable," NAGE continues, Dow's fraudulent concealment of the scheme tolled the statute of limitations until NAGE's discovery thereof in 2010.

Given the surreptitious nature of the scheme, plaintiff's claim likely qualifies as "inherently unknowable."  The Court need not decide the issue at this early stage, however, because the facts the defendant marshals in support of his defense are neither definitively ascertainable from the Complaint nor sufficient to establish the defense with certitude.

## ORDER

In accordance with the foregoing, the motion to dismiss filed by defendant Bernard Dow (Docket No. 25) is **DENIED**.

**So ordered.**

*Nathaniel M. Gorton*

Nathaniel M. Gorton
United States District Judge

Dated March 30, 2012