```
                  United States District Court
                    District of Massachusetts
_____
                               )
NATIONAL ASSOCIATION OF        )
GOVERNMENT EMPLOYEES,          )
         Plaintiff,            )
                               )    Civil No.
         v.                    )    11-11123-NMG
                               )
HON. ROBERT MULLIGAN, JOHN     )
O'BRIEN, BERNARD DOW, FRANCES  )
WALL, RONALD CORBETT, JR.,     )
WILLIAM BURKE, ELIZABETH TAVARES)
and PATRICIA WALSH,            )
         Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The Complaint alleges that the Massachusetts Office of the Commissioner of Probation ("the Probation Department"), at the insistence of then-Commissioner John O'Brien and with the active assistance of other senior officials, systematically based employment decisions on political affiliation in violation of the First Amendment to the United States Constitution.

The facts and procedural history of this case were recounted in a Memorandum and Order issued by this Court on March 21, 2012 and will be supplemented here only to the extent necessary. On March 21, 2012, the Court allowed the joint motion to intervene filed by the United States and the Commonwealth of Massachusetts, denied the motion to abstain filed by Chief Mulligan and Ronald

Corbett, Jr. and held in abeyance the motions to dismiss. In a supplemental Memorandum and Order issued on March 30, 2012, this Court denied the motion to dismiss filed by Bernard Dow and retained under advisement the remaining motions to dismiss. On April 24, 2012, the Court heard oral argument on defendant's motions to dismiss for lack of standing and failure to state a claim of political affiliation discrimination and took those motions under advisement. Upon further reflection and analysis, the Court now renders the following decision.

**I.   Standing**

National Association of Government Employees ("NAGE") brings this action in its associational capacity on behalf of those of its members aggrieved by the allegedly discriminatory hiring practices of the Probation Department. Ordinarily, an injured party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). A limited exception, known as the doctrine of "representational" or "associational" standing, allows an association to sue on behalf of its members if:

> 1) its members would otherwise have standing to sue in their own right, 2) the interests it seeks to protect are germane to the organization's purpose and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt, 432 U.S. at 343. The doctrine recognizes that associations

are typically organized for the purpose of protecting the interests of their members and, accordingly, usually have a substantial stake in the litigation they pursue on their behalf. Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co., 858 F.3d 33, 40 (1st Cir. 2009).

Defendants Burke, O'Brien, Walsh, Corbett and Chief Mulligan contend that NAGE lacks associational standing because the relief it seeks (rescission of the tainted probation appointments) pits the interests of one faction of its membership (NAGE members who obtained those appointments through the alleged "Pay for Play" scandal) against the interests of another faction (NAGE members who purportedly were fraudulently denied those appointments). That conflict of interest, they maintain, prevents NAGE from satisfying the third associational standing requirement, i.e., its claims cannot be adjudicated nor the requested relief awarded without the extensive participation of its members.  Plaintiff acknowledges the conflict but responds that it does not bear upon its standing to represent its members.

To ascertain what the Supreme Court meant when it announced that "extensive member participation" may defeat associational standing, the Court defers to the Hunt decision and its progeny. In Hunt, the Supreme Court stated that an association may not bring suit on behalf of its members unless "neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit." 432 U.S. at 343.  Considered in isolation, that language could mean that associational standing is not permitted if the participation of <u>any</u> member is necessary.  Subsequent decisions have clarified, however, that it is an imprecise paraphrase of the following more detailed principle announced by the Court in an earlier decision:

> [S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction.

E.g., Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, (3d Cir. 1991) (quoting Warth, 422 U.S. at 512).

It is thus resolved that an association may bring a claim that requires some participation by some of its members.  How much participation is the crucial question.  The Supreme Court has left unresolved when member participation becomes so "extensive" and an inquiry sufficiently "fact-intensive" to defeat associational standing.  To answer that question, the Court reviews three decisions of the First Circuit Court of Appeals.

In Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico, 906 F.2d 25, 35 (1st Cir. 1990), a trade association challenged the criminal prosecution of cable operators under an obscenity statute on the grounds that the conduct at issue was protected by the First Amendment and the Cable Communications

Policy Act.  Specifically, the association sought 1) a declaration that the obscenity statute, as applied, violated federal statutory and constitutional law and 2) an injunction enjoining the defendants from prosecuting cable operators under it. Id.  The First Circuit decided that the extensive member participation requirement was not an obstacle to standing because the pre-emption claims "turn[ed] on a question of law which is not particular to each member of the Association," and the declaration and injunction "applied equally to all members of the Association." Id.

In Pharmaceutical Care Management Association v. Rowe, No. Civ. 03-153-B-H, 2005 WL 757608 (D. Me. Feb. 2, 2005), aff'd 429 F.3d 294 (1st Cir. 2005) a closer case was presented.  There, an association sought to litigate claims for regulatory takings on behalf of its members.  The district court held that "prudence caution[ed] against further entertaining" the takings challenges of the association.  It reasoned that

> the viability of PCMA's takings claim varies member-by-member, not based on the threshold question of whether a given member does business in Maine and complies with the statute, but based on the highly individualized, underlying factual questions of whether and how a given member protects the information at issue and whether the confidential disclosure of the information to specific benefits providers or "covered entities" strips the information of all value as a trade secret or causes economic injury of constitutional proportion.

2005 WL 757608, at *12.  Although it found that the association

lacked standing, the district court nonetheless went on to dismiss the takings challenges on the merits. Id. at *12-23.

The First Circuit affirmed the district court's dismissal on appeal but the panel disagreed with the district court's denial of associational standing. Writing for the panel, Circuit Judge Torruella explained that even though takings inquiries are "intensely fact specific" and plaintiffs needed to introduce proof of specific member practices and effects of the law on specific members, the Pharmaceutical Care Management Association had standing to bring claims on behalf of its members because it was not necessary for them to participate in the litigation as parties. Id. at 306-07.  In so holding, Judge Torruella suggested that associational standing never becomes an issue where claims are for injunctive relief only.

Then-Chief Circuit Judge Michael Boudin and Circuit Judge Timothy Dyk of the Federal Circuit, sitting by designation, concurred in the judgment affirming the dismissal but wrote separately to express their disagreement on the associational standing issue, which they acknowledged was "difficult."  They began by noting the absence of any "well developed test in this circuit as to how the third prong of the Hunt test . . . applies in cases where injunctive relief is sought." Id. at 314-15.  They went on to distinguish Playboy Enterprises as factually inapposite and made clear that the decision was

>  not an open door for association standing in all
>  injunction cases where member circumstances differ and
>  proof of them is important.

Id. They then expressed their doubt that associational standing would have been proper had the case not been dismissed on other grounds, noting that the regulatory takings claims "could in principle be significantly strengthened or weakened by the particularized circumstances of each individual member" and pointing out the considerable variation in the circumstances of each member company. Id. at 314.

The logic of the concurring judges was vindicated by a unanimous panel of the First Circuit in New Hampshire Motor Transport Association v. Rowe, 448 F.3d 66 (1st Cir. 2006). In describing the requirements for establishing the third Hunt factor, the Court reiterated that it

>  did not embrace the proposition that, under Playboy
>  Enters. the third Hunt factor is always satisfied where
>  an association seeks injunctive relief on behalf of all
>  of its members.

Id. at 72. It then confirmed that associational standing is "inappropriate" if adjudicating the merits or determining damages requires the court to engage in a "fact-intensive-individual inquiry." Id. Against that backdrop, this Court considers defendants' challenge to NAGE's associational standing.

NAGE does not base its claim for political affiliation discrimination on the circumstances of one particular appointment. Instead, it alleges that the "Pay for Play" scheme operated by

-7-

the Probation Department Defendants deprived a number of NAGE members of their right to non-discriminatory consideration over a seven-year period. In connection with that claim, NAGE seeks two forms of relief: 1) a declaratory judgment that the aggrieved NAGE members "were discriminated against by the Probation Service on the basis of political affiliation or association (or lack thereof)" and thereby "suffered a deprivation of their constitutional rights" and 2) an injunction directing Chief Judge Mulligan to rescind any appointment made by the Probation Department in which political association played a substantial role and to reopen the tainted positions for competitive hiring.

Unlike most cases in which associational standing has been upheld, e.g., Playboy Enters., 906 F.2d at 35, this case does not turn on a pure question of law but rather on the application of law to a series of different factual scenarios. These claims for political affiliation discrimination are similar to the regulatory takings claims in Rowe in that each depends, in large part, on "the particularized circumstances of each individual member." 429 F.3d at 314. To adjudicate them, the Court will need to review the individual circumstances surrounding each of the tainted appointments to assess which positions, if any, were filled through a discriminatory hiring process and which NAGE members, if any, were discriminated against in that process.

The equitable relief requested will likewise require

extensive member participation because it cannot be granted through a declaration or injunction applicable to all members equally. Awarding relief here is more complicated than, for instance, prohibiting certain business practices across the board, College Of Dental Surgeons of P.R., 585 F.3d at 41, or enjoining the enforcement of a criminal statute for certain conduct, Playboy Enters., 906 F.2d at 35. Here, the Court cannot resolve the case without individualized consideration of each appointment because a finding of discrimination against representative members will be an insufficient basis on which to ground 1) a judgment that all of the aggrieved NAGE members were discriminated against or 2) an injunction directing the Trial Court Defendants to re-open all appointments made during the seven-year period.

All of which leads the Court to conclude that NAGE lacks associational standing. In so holding, this Court joins other district courts which have denied standing to associations seeking to litigate employment discrimination claims on behalf of their members. See Nat'l Fed'n of the Blind of Neb., Inc. v. Outlook Neb., Inc., No. 8:10CV418, 2011 WL 4802643, at *5-11 (D. Neb. 2011); Educadores Puertorriqueños v. Rey Hernandez, 508 F. Supp. 2d 164, 175 (D.P.R. 2007); Leaming v. Jackson Cnty., Mo., No. 03-00940-CV-W-SWH, 2006 WL 1046906, at *21-22 (W.D. Mo. 2006); Access for the Disabled, Inc. v. Rosof, No.

805CV1413T30TBM, 2005 WL 3556046, at *2 (M.D. Fla. 2005); Tex. Peace Officers Ass'n v. City of Galveston, Tex., 944 F. Supp. 562, 563 (S.D. Tex. 1996).

## II. Jurisdiction

Because NAGE lacks standing to bring political affiliation claims on behalf of its members, this Court lacks subject-matter jurisdiction to hear them. See Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st. Cir. 2012). Accordingly, the Court declines to address defendants' contention that NAGE fails to state a claim of political affiliation discrimination. Individuals aggrieved by the hiring policies of the Probation Department may very well have actionable claims against some of the defendants for political affiliation discrimination. To vindicate any such claims, however, they must bring them in their individual capacities.

The Court declines to hear plaintiff's remaining state-law claims for fraud and intentional interference with contract, over which it otherwise would have had supplemental jurisdiction. The dismissal of a federal claim which forms the basis for a district court's original jurisdiction does not automatically divest the court of its supplemental jurisdiction over pendant state-law claims but does require the court to assess pragmatically whether retaining jurisdiction is in the interest of "fairness, judicial economy, convenience, and comity." Camelio v. Am. Fed'n, 137 F.3d

666, 672 (1st. Cir. 1998). Here, the balance of competing factors weighs against the exercise of supplemental jurisdiction.

### ORDER

In accordance with the foregoing,

1) because NAGE lacks associational standing to bring claims for political affiliation discrimination on behalf of its members, defendants' motions to dismiss (Docket No. 31, 33 and 49) are **ALLOWED,**

2) the Amended Complaint (Docket No. 16) is **DISMISSED,** and

3) defendants' motion to stay proceedings (Docket No. 29) is **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 11, 2012